# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMES ERVIN SHANKLE,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

Case No. 14-CV-380-JPS

ORDER

On February 5, 2013, Administrative Law Judge Carla L. Waters ("the ALJ") issued a decision finding that the plaintiff, James Shankle, is not disabled. (Tr. 11–19). Mr. Shankle requested review of that decision by the Appeals Council, which denied his request. (Tr. 1–7).

Mr. Shankle's appeal of the ALJ's decision is now before the Court. (Docket #1). The matter is now fully briefed. (Docket #11, #13, #14). Mr. Shankle raises several arguments, all of which relate to evidentiary issues in some fashion. The Court will address each issue in turn.

For the most part, the Court will address relevant background information as part of its legal analysis. But there are two underlying principles that are extremely important to the outcome of this case:

    First,      Mr. Shankle bears the burden of proving his disabling conditions; and,

    Second,    Mr. Shankle must show "that he was disabled on or before his date last insured," in this case December 31,

2008,[1] as the ALJ determined (Tr. 13) and to which no party objects.

*Allord v. Astrue*, 631 F.3d 411, 416 (7th Cir. 2011) (claimant bears burden of establishing disability on or before date last insured) (citing 42 U.S.C. §§ 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.1514; *Briscoe*, 425 F.3d at 351; *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991)); 20 C.F.R. §§ 404.110, 404.131–404.132, 404.140 (regulations regarding insured status).

As for the standard of review, the Court must generally defer to the ALJ's determinations, and uphold those determinations when they are supported by "substantial evidence"—meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (internal quotation omitted); citing *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007)); 42 U.S.C. § 405(g). If, on the other hand, the ALJ's determinations were not supported by substantial evidence or the ALJ failed to "build an accurate and logical bridge between the evidence and the result," the Court should overturn his decision. *See, e.g.*, *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

Mr. Shankle first argues that the ALJ erred by relying too heavily on a lack of ankle and shoulder treatment records to find Mr. Shankle was not disabled. (*See* Docket #11 at 10–16). In support, he cites SSR 83-20 and *Briscoe*,

---

[1] Because Mr. Shankle's alleged disability was a "slowly progressive impairment," the ALJ was tasked with determining "'the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent [Mr. Shankle] from engaging in [substantial gainful activity] for a continuous period of at least 12 months.'" *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2006) (quoting SSR 83-20, 1983 WL 31249, at *2–*3 (Jan. 1, 1983) (hereinafter, "SSR 83-20")).

425 F.3d at 352–53, in addition to other cases. (*See* Docket #11 at 12–14 (also citing *Nolen v. Sullivan*, 939 F.2d 516, 519–20 (7th Cir. 1991); *Lichter v. Bowen*, 814 F.2d 430, 434–35 (7th Cir. 1987)). Discussing SSR 83-20, the Seventh Circuit in *Briscoe* noted:

> Under SSR 83–20, an ALJ must consider three factors when determining the onset date of disabilities of a nontraumatic origin: (1) the claimant's alleged onset date; (2) the claimant's work history; and (3) medical and all other relevant evidence. The date that the claimant alleges as an onset date should be the starting point of the analysis, and that date "should be used if it is consistent with all the evidence available." The day when the impairment caused the individual to stop work is also important. Nevertheless, medical evidence is "the primary element in the onset determination," and the date chosen "can never be inconsistent with the medical evidence of record." This does not mean that a claim is doomed for lack of medical evidence establishing the precise date an impairment became disabling. In such cases, the ALJ must "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process" and should seek the assistance of a medical expert to make this inference. Where no reasonable inference is possible based on the available evidence and additional medical evidence is not available, "it may be necessary to explore other sources of documentation…from family members, friends, and former employees to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition."

*Briscoe*, 425 F.3d at 353 (internal quotations to SSR 83-20 at *2–*3).

So, while Mr. Shankle's alleged onset date of no later than December 31, 2008, is important, it cannot "be inconsistent with the medical evidence of record." SSR 83-20 at *3. Accordingly, the ALJ examined the medical evidence relating to Mr. Shankle's shoulder and ankle impairments.

As to the shoulder impairments, the ALJ noted that Mr. Shankle first saw a doctor in October of 2002. (Tr. 15). At that time, Mr. Shankle advised

his doctor that Ibuprofen substantially eased his pain, but he still suffered "a little bit of weakness and decreased motion." (Tr. 15). So, at that time, his doctor told him to continue taking Ibuprofen; further medication or treatment would be possible if his condition worsened. (Tr. 15–16). From 2003 through the end of 2008—and particularly between June and December of 2008—Mr. Shankle received at most "only limited treatment for his shoulder." (Docket #11 at 10). (*See also* Tr. 16). In fact, in October of 2010, he reported that "no doctor had limited him in the amount of weight he could lift." (Tr. 16). It seems that, since that time, Mr. Shankle's shoulder condition has deteriorated: in December of 2012, at his hearing before the ALJ, Mr. Shankle testified that he may soon need to receive shoulder surgery. (Tr. 16). Nevertheless, as already discussed, the ALJ was tasked with determining whether Mr. Shankle's disability had onset by the end of December of 2008. Finding that Mr. Shankle received extremely limited treatment for his shoulder prior to the end of December of 2008, without explanation for that lack of treatment, and finding it reasonable to assume the Mr. Shankle would have sought treatment for his shoulder pain if he experienced ongoing problems, the ALJ concluded that the evidence did "not support a finding that his shoulder impairment prevented him from performing work activities…." (Tr. 16).

The ALJ engaged in a similar analysis regarding Mr. Shankle's ankle injury. (Tr. 16–17). Mr. Shankle was injured in a car accident in June of 2008. (Tr. 16). He thereafter underwent surgery, which was successful. (*See* Tr. 16). In the weeks and months following surgery, Mr. Shankle stopped using crutches, was able to bear weight on his ankle, reported that his ankle felt good with occasional discomfort, walked with a normal gait in a boot, had a good range of motion, and appeared to be healing. (Tr. 16). Mr. Shankle did

not receive any further treatment for his ankle between October of 2008 (no less than four months after the car accident) and July of 2009. (Tr. 16). In July of 2009, he received an ankle examination, which revealed "advanced arthrosis," together with continued swelling and ache in his ankle. (Tr. 16). Otherwise, his ankle displayed "good overall alignment," and "could do what he wanted" on his ankle, limited only by his own pain. (Tr. 16–17). Mr. Shankle then went another year without ankle treatment. (*See* Tr. 17). But, in August of 2010, he reported that his ankle pain had worsened. (Tr. 17). Testing showed significant issues with his ankle, so Mr. Shankle received ankle replacement surgery in January of 2011. (Tr. 17). The ALJ acknowledged that Mr. Shankle's condition worsened after December of 2008, but found that the evidence would "not support a finding that he was more limited," than the ALJ's RFC determination as of December 31, 2008.

In sum, as to both Mr. Shankle's shoulder and ankle impairments, the ALJ acknowledged that the impairments worsened after December 31, 2008. But, relying on a lack of medical evidence leading up to December 31, 2008, the ALJ determined that Mr. Shankle was not disabled as of that date.

There are a number of potential problems with this determination. First, the Court questions whether it was appropriate for the ALJ to rely solely on the lack of pre-December 31, 2008, treatment records to support her finding of non-disability. Second, even if that reliance was appropriate, the Court seriously questions whether the ALJ established the accurate and logical bridge between that evidence and the result. Third, if there was an accurate and logical bridge, the Court remains unpersuaded still is not convinced that there was substantial evidence to support the ALJ's determination.

As to the first of those potential problems, the Court begins by pointing out that "why a claimant failed to undergo treatment is one factor to consider when assessing an impairment," and an ALJ may consider gaps in treatment. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2005); 20 C.F.R. § 404.1512(c); *Bowen v. Tuckert*, 482 U.S. 137, 146 n. 5 (1987)); 20 C.F.R. § 404.1529(c)(3). So, the ALJ's mere consideration of Mr. Shankle's lack of medical treatment is not an error. But, as *Briscoe* noted, where it is difficult to make a determination as to the actual onset date, "the ALJ must 'infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process' and should seek the assistance of a medical expert to make this inference." 425 F.3d at 353 (quoting SSR 83-20 at *2-*3). Here, the ALJ attempted to infer the onset date from the medical evidence, alone, without much inquiry into other evidence—for example, any explanations from Mr. Shankle for lack of treatment, *see, e.g.*, *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014)—or the assistance of a medical expert. Under *Briscoe*, that seems to be an error.

Perhaps the Commissioner could argue that the ALJ did, in fact, rely on other evidence to reach her conclusion that Mr. Shankle was not disabled as of December 31, 2008. Indeed, at later points in the brief, the ALJ examined "additional inconsistencies in the record," and also the opinions of two state agency physicians. (Tr. 18). But, the ALJ never draws any connection between that evidence and her determination that Mr. Shankle was not disabled as of December 31, 2008. (*See* Tr. 18). Rather, that determination appears several paragraphs before and is self-contained in a discussion of the gaps of Mr. Shankle's treatment. (Tr. 16–17). Thus, it appears that the ALJ's

determination of non-disability as of December 31, 2008, was based solely on the gaps in Mr. Shankle's treatment.

Second, even if that were not error under *Briscoe*, the Court still finds error, because the ALJ did not build an "accurate and logical bridge" between the evidence and her determination. In reaching her determination, she relied solely on the mere fact that there was a gap, without any inquiry into or discussion of reasons for that gap other than noting that Mr. Shankle had "not explained his failure," to seek other treatment. (Tr. 17). Moreover, Mr. Shankle's shoulder and ankle conditions are degenerative impairments, which were obviously problematic at some point before December 31, 2008—indeed Mr. Shankle had just received surgery on his ankle after a car wreck in June of 2008. (*See* Tr. 16–17). Thus, it would be logical to believe that Mr. Shankle was unable to perform his previous work on December 31, 2008, and for 12 months thereafter. But, relying solely on lack of treatment—and without providing any accurate or logical bridge between that lack, alone, and the ultimate determination—the ALJ found Mr. Shankle was not disabled on December 31, 2008.

If the Court were to look at the other evidence cited—additional inconsistencies and state agency opinions (Tr. 18)—it would likewise find the lack of an accurate and logical bridge. The ALJ failed to discuss any connection between that evidence and her ultimate determination that Mr. Shankle was not disabled as of December 31, 2008.

Third, even if the ALJ had built an accurate and logical bridge, her determination was not supported by substantial evidence. Lack of treatment, alone, may be probative of lack of disability, but without more does not constitute substantial evidence, seeing as lack of treatment alone does not establish that Mr. Shankle could perform the significant demands of his prior

work—significant standing and walking on an ankle that had recently received surgery and lifting of 50 pounds with a problematic shoulder. *See, e.g.*, *Murphy*, 759 F.3d at 818 (ALJ's determination was problematic because, while it relied on medical evidence, it did not "address the legal requirements one must be able to perform before the ALJ can determine that the individual is able to do" the type of work at issue). To be sure, the Court cannot re-weigh the evidence. *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). Nor must a determination "contain written evaluation of every piece of evidence." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhardt*, 395 F.3d 737, 744 (7th Cir. 2005)). But, here, the ALJ relied only on an exceedingly indefinite piece of medical evidence. Lack of treatment for a period of time may show that Mr. Shankle's condition worsened, but it does little to show what Mr. Shankle was capable of during the period in question—especially when considering the fact that the ALJ was attempting to determine whether Mr. Shankle could perform the relatively rigorous demands of his previous job.

Even if the Court were to consider the remaining evidence—again, the additional inconsistencies and medical opinions (Tr. 18), disconnected as they are from the substance of the ALJ's opinion—that evidence would not constitute substantial evidence. The plaintiff's return to part-time work is of practically no importance: Mr. Shankle testified, and the ALJ accepted, that his activity level at that job was minimal. (*See* Tr. 18). The ALJ also relied on incorrect information regarding Mr. Shankle's alleged side business of rehabbing homes (he, in fact, was a volunteer and did nothing more than supervise). (Tr. 18). Finally, the ALJ looked significantly at Mr. Shankle's activities of daily living, an area the Seventh Circuit has repeatedly pointed out as one of concern, *see, e.g.*, *Hughes v. Astrue*, No. 12-1873 at 5–6 (7th Cir.

2013), but did not delve very deeply into them to determine their relevance to Mr. Shankle's ability to perform the significant requirements of his past work. (Tr. 18). For example, the ALJ pointed out that Mr. Shankle reported attending sporting events, going fishing, going hunting, and cleaning his eight fish tanks. (Tr. 18). But any of those activities could be performed in a sedentary manner, and the ALJ did not inquire into any of them to determine their actual evidentiary value to Mr. Shankle's claims. Meanwhile, one of the medical opinions "was offered without the benefit of the entire record, specifically, the claimant's hearing testimony," so the ALJ did not accept a portion of it. (Tr.18). And the ALJ hardly provided any discussion of the remaining medical opinion and how it would support her conclusion, stating that the record does not contain medical statements contradicting it, but not discussing its relation to any of the other evidence. (Tr. 18). In sum, even accepting all of the offered evidence together, in spite of the lack of relation back to the ALJ's ultimate determination (*see* Tr. 16–18), that evidence is not "substantial evidence," and does not support the ALJ's decision.

For these reasons—over-reliance on gaps in treatment, failure to build an accurate and logical bridge, and failure to base her determination on substantial evidence—the Court is obliged to find that the ALJ's determination was in error.

The Court has already found that the ALJ erred in her non-disability determination, and so need not consider Mr. Shankle's remaining arguments, regarding the ALJ's alleged failure to consider the combination of his impairments and reliance on vocational expert testimony. Suffice it to say that it appears that the ALJ made her non-disability determinations entirely separate from one another, meaning that she did not consider the combined effect of the impairments. She did note that "the obesity, by itself or in

combination with any other impairment," would not prevent the defendant's work. But, similar language regarding combined effects did not appear in the discussion of Mr. Shankle's other impairments. Meanwhile, the vocational expert's testimony failed to account for certain requirements of the defendant's past work. Thus, while the Court need not reach those issues to find error in this case, they would likely form a separate basis for relief.

The Court ends by pointing out that, as appears from its research, the Seventh Circuit has considered 24 social security appeals this year; of those, it has found error in the ALJ's decision in 18, a remarkable 75% reversal rate. *See, e.g.*, *Dean v. Colvin*, No. 13-3627, 2014 WL 4723624 (7th Cir. Sept. 24, 2014) (affirming ALJ decision); *Browning v. Colvin*, No. 13-3836, 2014 WL 4370648 (7th Cir. Sept. 4, 2014); *Scrogham v. Colvin*, No. 13-3601, 2014 WL 4211051 (7th Cir. Aug. 27, 2014); *Goins v. Colvin*, No. 13-3729, 2014 WL 4073108 (7th Cir. Aug. 19, 2014); *Moon v. Colvin*, No. 13-3636, 2014 WL 3956762 (7th Cir. Aug. 14, 2014); *Boley v. Colvin*, No. 13-1252, 2014 WL 3810999 (7th Cir. Aug. 4, 2014); *Thompson v. Colvin*, No. 13-3531, 2014 WL 3805470 (7th Cir. Aug. 4, 2014) (affirming ALJ decision); *Hanson v. Colvin*, No. 13-3473, 2014 WL 3732910 (7th Cir. July 30, 2014); *Murphy v. Colvin*, No. 13-3154, 2014 WL 358620 (7th Cir. July 22, 2014); *Warren v. Colvin*, 565 F. App'x 540 (7th Cir. 2014); *Beardsley*, 758 F.3d 834; *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014); *Williams v. Colvin*, 757 F.3d 610 (7th Cir. 2014); *Sambrooks v. Colvin*, 566 F. App'x 506 (7th Cir. 2014); *Carter v. Colvin*, 556 F. App'x 523 (7th Cir. 2014) (affirming ALJ decision); *Donnelly v. Colvin*, 561 F. App'x 524 (7th Cir. 2014) (affirming ALJ decision); *DeGrazio v. Colvin*, 558 F. App'x 649 (7th Cir. 2014); *Brassai v. Colvin*, 558 F. App'x 673 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802 (7th Cir. 2014); *Moore v. Colvin*, 743 1118 (7th Cir. 2014); *Ronning v. Colvin*, 555 F. App'x 619 (7th Cir. 2014) (affirming ALJ decision); *Hoyt v. Colvin*, 553

F. App'x 625 (7th Cir. 2014); *Olsen v. Colvin*, 551 F. App'x 868 (7th Cir. 2014) (affirming ALJ decision); *Pierce v. Colvin*, 739 F.3d 1046 (7th Cir. 2014). The Court makes this observation only to provide context for its decision: Mr. Shankle may ultimately be found not disabled, but given the backdrop of the case law, which is ballooning and seeming to grow increasingly claimant-friendly, the Court is obliged to find that Mr. Shankle was not provided with the proper consideration that he was due. The ALJ's determination was in error. Thus, the Court must now remand the case.

Accordingly,

IT IS ORDERED that the opinion of the ALJ be and the same is hereby VACATED and REMANDED for further proceedings consistent with this opinion.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of November, 2014.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge